J. A. Fay & Egan Co. and others vs. Brown and others.

---

J. A. FAY & EGAN COMPANY and others, Respondents, vs. BROWN, Appellant, and NORTHWESTERN CAR & MACHINE COMPANY and others, Respondents.

*May 1 — June 11, 1897.*

(1) *Contracts: Construction: "Day."* (2-4) *Corporations: Mortgage to stockholder:* Bona fide *purchaser: Sufficiency of interest to raise objection: Laborers' claims: Payment by stockholder personally liable: Preference.*

1. An agreement by the promoters of a corporation to construct and operate in a certain city a car factory with a capacity of ten new box cars per day, upon condition that certain citizens should de-

nate a site and a specified bonus, is not fulfilled so as to entitle the corporation to a conveyance of the site unless it appears that the factory erected is capable of constructing the specified number of cars in an ordinary working day of ten hours.

2. A promoter of a corporation, who takes a mortgage from it upon land which it holds under a contract entitling it to a conveyance upon the completion of a factory thereon as specified in the contract, is not an innocent purchaser, and therefore acquires no greater interest in the premises than the corporation had.

3. The corporation in such case having lost its interest in the land by failure to comply with the contract, the mortgagee had no interest therein which would entitle him to raise the objection that there had been an error in determining the quantity of land upon which a mechanic's lien should be adjudged.

4. One of the stockholders of a corporation which never became legally authorized to do business paid laborers' claims for work done for the corporation immediately prior to the appointment of a receiver. *Held,* that he was not entitled to a preference under sec. 2787*a*, S. & B. Ann. Stats., since he was personally liable for the debts of the corporation under sec. 1773, R. S.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

This is a consolidated action composed of a mechanic's lien action and a creditors' bill to sequestrate the property and wind up the affairs of an insolvent corporation. The leading facts out of which the litigation arose may be briefly stated as follows:

Early in 1893 the defendant *James L. Brown* and one Anderson came to Oshkosh with a scheme for locating and building at that place a large plant for the construction of freight cars. They succeeded in interesting some of the citizens of Oshkosh, and finally made an agreement with a committee of citizens to construct and operate in Oshkosh a car factory with a capacity of ten new box cars per day, upon condition that the citizens of Oshkosh should donate to them thirty acres of land and a bonus of $25,000. Thereupon *Brown* and Anderson and some associates formed a corporation called the *Northwestern Car & Machine Com-*

*pany* with a nominal capital stock of $500,000. This corporation immediately commenced to erect large buildings, and in so doing incurred debts for building materials and machinery furnished, which debts are the foundation of the mechanic's lien action. No cash was paid for stock in the corporation exceeding $600. *Mr. James L. Brown,* the appellant, who was a stockholder in the corporation, claims to have advanced to the corporation about $36,000, to secure which he claims to hold a valid mortgage upon the personal property of the corporation, and also upon the real estate upon which the plant was erected. *Mr. Brown* also obtained a judgment by confession for $36,000 against the corporation, and commenced a sequestration action against the corporation, and procured the appointment of a receiver. The last-named action was commenced a few days after the lien action, and by consent the two actions were consolidated, and tried together, and the conflicting claims of the lien claimants, and of *Mr. Brown* as mortgagee and judgment creditor, and of the citizens who agreed to pay the money bonus and contribute the real estate, formed the various subjects of controversy in this litigation.

After a long trial, the court made findings of fact, in substance as follows: (1) That the *Northwestern Car & Machine Company* was organized as a corporation on the 28th of March, 1893, for the principal purpose of manufacturing cars of all kinds, with a capital stock of $500,000, in shares of $100 each, and of this amount $200,000 was subscribed for, as follows: *J. L. Brown,* one share; P. E. Brown, Jr., one share; P. E. Brown, one share; W. A. Ryan, one share; R. F. Delaronde, one share; P. Des Lauriers, one share; F. Adolphus Anderson, 1,994 shares; that *J. L. Brown* paid $100 for his share; that Ryan paid nothing for the share subscribed for by him; that as for the shares subscribed for by P. E. Brown, P. E. Brown, Jr., Delaronde, and Des Lauriers there is no satisfactory evidence that anything was paid for them; that

the only payment made by Anderson for his said shares was a transfer to the company of 1,246 shares of the capital stock of the Northwestern Despatch Fast Freight Line, a New Jersey corporation, which was afterwards transferred as collateral security to the *Niles Tool Works Company*, one of the lien claimants, and on this trial surrendered by the *Niles Tool Works Company* to the receiver, and that said stock is now of no value; that said company claimed to issue also $100,000 preferred stock to Anderson, but that nothing was ever paid therefor, but that it was intended that such preferred stock should be distributed among the promoters of the scheme as being for the bonus of land and money subscribed by the citizens of Oshkosh.

(2) That in the spring of 1893 negotiations were had between the corporation and certain citizens of Oshkosh with a view to locating this plant in Oshkosh in consideration of a bonus of land and money, which negotiations resulted in an agreement by which the corporation agreed to build a car plant on certain property in said city, capable of turning out ten new box cars per day, in consideration whereof said citizens agreed, upon the completion of said plant with the capacity aforesaid, "said capacity to be determined by a competent judge or judges familiar with such work," to pay said corporation a cash bonus of $25,000, and to deed to the corporation twenty-five acres of land, including the land upon which the buildings were to be erected, as a site for the factory. The title to the land was placed in the name of the defendant *Choate* in trust to carry out the agreement upon the completion of the shops. Said *Choate* also assumed the responsibility of collecting and turning over to the corporation the cash bonus, and gave the corporation a bond to that effect. The erection of the buildings and machinery thereupon proceeded with rapidity.

(3) That the owners of the real estate and the said *Choate*

all knew of the erection of the buildings, and consented thereto.

(4) That the various lien claimants particularly named in the findings furnished materials and performed labor about the erection and construction of such buildings to the amount set forth in the findings; the gross amount of such liens being about $35,000.

(5) That the defendant *J. L. Brown* holds what purports to be a mortgage for more than $36,000 upon the real estate which the citizens of Oshkosh contracted to deed to the corporation, which mortgage bears date November 4, 1893, but that said mortgage is void because never authorized at a meeting of the stockholders of the corporation.

(6) That said corporation never had any capital beyond a few hundred dollars, but was absolutely insolvent from the day it started, and this fact was known to both *J. L. Brown* and Anderson, who were the real managers of the enterprise.

(7) That the defendant *J. L. Brown* also claims to hold a chattel mortgage upon the personal property of the corporation to secure said pretended indebtedness, but that said chattel mortgage was never authorized by the stockholders of the corporation.

(8) That said pretended chattel mortgage and pretended real estate mortgage attempted to convey all the property of the corporation to *Brown*, a stockholder of the corporation, to secure a preference to him over all other creditors of the corporation.

(9) That *Mr. Brown* actually advanced to the corporation $26,400, for which sum he is entitled to be paid *pro rata* with the other unsecured creditors out of any funds applicable to such payments after the payment of the lien claimants and other secured creditors.

(10) That the corporation has never in fact performed its

contract with *Mr. Choate*, nor earned its bonus, either of land or money, because it has never operated a plant capable of constructing ten new box cars per day, but that its capacity, as determined by competent judges, was to construct five box cars per day only.

(11) That one acre of the land cannot be taken out of the tract so as to include all the buildings and appurtenances, and that there are five separate and distinct buildings, and that it is necessary to take one acre in connection with each building, so that a lien is given upon five acres of land in a compact form upon which the buildings are located.

(12) That at the time of the appointment of the receiver herein certain claims for labor were unpaid, and that *Mr. J. L. Brown* paid the same, amounting to the sum of $4,236, but that he paid them under an agreement with the receiver, made before the receiver accepted the receivership, that he would pay and discharge such claims.

The legal conclusions from these findings were, in brief, to the effect that the lien claimants had good and valid liens upon the buildings and five acres of land; that *Mr. Brown's* real estate and chattel mortgages gave him no liens; that the real estate and money bonuses had neither of them been earned; that *Mr. Brown's* position was simply that of an unsecured creditor for the amounts by him advanced to the corporation. Judgment was entered adjudging the amounts of the various lien claims, and that the five acres of land aforesaid, and the buildings thereon, be sold to pay the same, or so much of said claims as the proceeds will pay; that the real estate and chattel mortgages held by *Brown* be canceled and set aside; that the real estate and money bonus had been forfeited; that *James L. Brown* was an unsecured creditor to the extent of $30,636; that the personal property of the corporation be sold, and the proceeds used by the receiver to discharge the expenses of the receivership, and that the surplus, if there be any, be distributed

ratably among the unsecured creditors. From this judg-ment *Brown* appealed.

For the appellant there were briefs by *Runnells & Burry* and *Felker, Stewart & Felker*, and oral argument by *L. C. Brooks.* They contended, *inter alia*, that the word " day " in jurisprudence means, as a general rule, the twenty-four hours elapsing between one midnight and the next succeed-ing midnight. Black, Law Dict.; Anderson, Law Dict.; 5. Am. & Eng. Ency. of Law, 81; 2 Bl. Comm. 141. And when used in a contract or statute, unless restricted by its terms to a shorter period, means the twenty-four hours. *Ben-son v. Adams*, 69 Ind. 354; *Helphenstine v. Vincennes Nat.. Bank*, 65 id. 589; *Zimmerman v. Cowan*, 107 Ill. 631; *Peo-ple ex rel. Harless v. Hatch*, 33 id. 136; *Pulling v. People*, 8 Barb. 385; *Haines v. State*, 7 Tex. App. 33; *Price v. Tucker*,. 5 La. Ann. 514; *Kane v. Comm.* 89 Pa. St. 522.

For the respondents there were separate briefs by *M. C. Phillips*, attorney, and *Phillips & Hicks*, of counsel, for the. *J. A. Fay & Egan Co.* and others; *C. D. Cleveland*, counsel. for *Choate* and *Lull; Hooper & Hooper*, attorneys 'for the *Niles Tool Works Co.*; and *Thompson, Harshaw & Thomp-son*, attorneys for *W. D. Allen & Co.* and others; and the cause was argued orally by *J. C. Thompson, Ben. Hooper*,. and *Mr. Cleveland*.

WINSLOW, J. The claims of the appellant, *Brown*, are in. brief: (1) That the real estate and money bonus had been earned; (2) that his real estate and chattel mortgages are. valid; (3) that the lien claimants should not have been given a lien on more than one acre; (4) that he should have been allowed at least $5,000 more upon his claim; (5) that he should have been given a first lien on labor claims paid by him just before and just after the appointment of the re-ceiver.

1. This was a corporation organized apparently for the.

prime purpose of obtaining the large bonus offered by the citizens of Oshkosh, and incidentally for the manufacture of freight cars. It is forcibly, though perhaps inelegantly, described in the brief of counsel for the respondent *Choate* as a " corporation with a capital *on paper* of $500,000,— actual capital stock paid for, not to exceed $300,— the balance of $499,700 was *wind.*" The manipulators of the scheme were *Mr. J. L. Brown* and Mr. F. Adolphus Anderson. They succeeded in producing a plant for the manufacture of cars which actually made and finished five freight cars. It was plastered with mechanics' liens and claims for unpaid machinery bills to the extent of about $35,000. A large portion of the machinery was placed in the buildings simply upon conditional contracts of sale, which reserved title in the vendors until the machinery was paid for. Experts examined it, and pronounced it capable of producing five cars during the ordinary working day of ten hours. This is the plant which was tendered to the confiding and public-spirited citizens of Oshkosh as a full compliance with the agreement to build and complete a plant capable of constructing ten new box cars per day.

It may well be doubted whether a plant which was covered with liens which the company could not discharge, and which were fast ripening into title, could, in any event, be considered as a compliance with the contract. It would seem like keeping the promise to the ear and breaking it to the hope. But, aside from this question, the fact that the evidence shows that the plant was never capable of constructing or turning out more than five box cars per day is conclusive. The agreement was to complete a plant capable of constructing and turning out " ten new box cars per day." We agree entirely with the trial court in construing the word " day " as here used to mean the ordinary working day, and not as meaning twenty-four hours. It is claimed that the evidence shows that by running night and day with two shifts of men, the works could construct ten cars within

twenty-four hours, and that this should be held a performance of the contract; but this claim seems to us entirely untenable.   Words used in a contract are to be construed in their ordinary sense as commonly used, and not in a strained or unusual sense.   The word "day," used in this connection, usually, if not universally, means an ordinary working day.

2. This finding of fact to the effect that the plant was never completed so as to earn the bonus of land and money really disposes of the major portion of the appellant's claims. If the land was never earned by the corporation, then *Mr. Brown's* mortgage upon the land gave him no lien, because he was not an innocent purchaser, and could get no greater interest than the company had, and that had none.   Furthermore, it is found by the court upon evidence which we regard as sufficient that the execution of these mortgages upon the entire real and personal property of the company was never authorized by the company.   There may be other complete defenses to the mortgages shown by the evidence, but it is unnecessary to pursue the subject further.

3. As to the claim that it was error to adjudge mechanics' liens upon more than one acre of land, it is sufficient to say that the appellant, *Brown*, has no interest in this matter which entitles him to question the judgment in this regard. Having no mortgage lien upon the land in any event, he is not prejudiced by the judgment of lien upon five acres.   No one who has any interest in the land has appealed from this part of the judgment.

4. The claim that *Brown* should have been allowed $5,000 more upon his claim is based upon some evidence showing that he turned over $5,000 face value of certain corporate bonds to the E. P. Allis Company as collateral security for the purchase of engines and boilers by the corporation.   It appears by the findings that these bonds were returned to *Brown* when *Choate* purchased the Allis claim and that he (*Brown*) then turned them over to Anderson, after which there is no evidence to show what became of them.   The

court concluded upon these facts that if *Brown* has any claim upon any one for them it is upon Anderson individually, and in this conclusion we agree.

5. It appears that *Mr. Brown* paid something over $4,000 to laborers who had been working in the shop, just prior to the appointment of the receiver, and he claims that he should be allowed this amount as a preferred creditor under sec. 2787*a*, S. & B. Ann. Stats. There are a number of complete answers to this proposition, but one will serve. In paying these laborers *Mr. Brown* was simply paying his own debt. The corporation had never been legally organized, as required by sec. 1773, R. S., so that it could do business with others than its members. It is very doubtful whether half of its capital had ever been subscribed, and it is absolutely certain that twenty per cent. had never been paid in. *Mr. Brown* was and is a stockholder. He so alleges in his complaint in this action, and that allegation has never been withdrawn, and he is bound by it. In paying these laborers he was but paying his own debt, and he can have no preference therefor.

Some other minor contentions are made, but they possess no merit.

*By the Court.*— Judgment affirmed.